(C. D. 1971)

GENERAL CHAIN & BELT COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 5, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

LAWRENCE, Judge: The importation to which this case relates consists of two items of so-called "mortise chains," designated as number 139910, represented by exhibit 1, one-fourth of an inch in diameter, and number 139912, three-eighths of an inch in diameter.

The collector of customs classified the items in paragraph 352 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 352), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which provides for cutting tools of any kind containing more than one-tenth of 1 per centum vanadium, or more than two-tenths of 1 per centum tungsten, molybdenum, or chromium, and duty was imposed thereon at the rate of 30 per centum ad valorem.

Although the protest of the plaintiff invokes various provisions of the statutes providing lower rates of duty than that assessed, the claim primarily relied upon, as stated by plaintiff's counsel at the trial, is that the merchandise should be classified in paragraph 329 of said act (19 U. S. C. § 1001, par. 329), as modified by the General Agreement on Tariffs and Trade, *supra*, as "Chain and chains of all kinds, made of iron or steel," the rate of duty applicable depending upon the diameter of the chain.

We shall also consider plaintiff's claim for classification of the merchandise in paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 126, T. D. 52739, which provides, in part, for articles having as an essential feature an electrical element or device, and parts thereof.

## THE STATUTES

The pertinent text of paragraphs 329, 352, and 353, *supra*, is here set forth—certain portions being stressed:

Paragraph 329, as modified by the General Agreement on Tariffs and Trade, *supra*:

Chain and chains of all kinds, made of iron or steel:
    Not less than three-eighths of one inch in diameter_____ ½¢ per lb.

\*    \*    \*    \*    \*    \*    \*

    Less than five-sixteenths of one inch in diameter_____ 2¢ per lb.

Paragraph 352, Tariff Act of 1930:

Twist and other drills, reamers, milling cutters, taps, dies, die heads, and metal-cutting tools of all descriptions, and cutting edges or parts for use in such tools, composed of steel or substitutes for steel, all the foregoing, if suitable for use in cutting metal, not specially provided for, 50 per centum ad valorem; cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium, 60 per centum ad valorem. *The foregoing rates shall apply whether or not the*

*articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.*

Paragraph 352, as modified by the General Agreement on Tariffs and Trade, *supra*:

| | |
|---|---|
| Cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium_ | 30% ad val. |

Paragraph 353, as modified by the Torquay protocol, *supra*:

| | |
|---|---|
| Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, * * * finished or unfinished, wholly or or in chief value of metal, and not specially provided for: | |
|     Other (* * *)_____ | 13¾% ad val. |
| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part * * *_____ | The same rate of duty as the articles of which they are parts |

The only witness in the case, Joseph Joy, called by plaintiff, testified that he was managing director and chief engineer of plaintiff's company, which is engaged in the marketing of mechanical engineering equipment, including chains of all kinds.

It appears from his testimony that the subject merchandise is composed in chief value of steel, not plated with platinum, gold, or silver; that the chain has less than a 2-inch pitch and contains more than three parts per pitch; and that the chain (exhibit 1), together with a sprocket (exhibit 2) and a guide bar (exhibit 3), in combination is known as a "mortise equipment," "mortise gear," or as a "mortise cutting set." Joy further stated that the combination is used as the operating device on an electrically driven mortise machine, illustrated by exhibit 6, to cut holes in wood or other soft material, represented by exhibit 5, the wood piece being clamped in the machine by a "holding" device, as indicated on exhibit 6.

The mortise chain itself is composed of three parts—(1) side or outside plates with cutting points, represented by exhibit 4–a; (2) center plates, with cutting points, represented by exhibit 4–b; and (3) pins which hold the plates together, exhibit 4.

In view of the conclusion we have reached herein, we find it unnecessary to consider any other provisions of the statutes than those above referred to.

Plaintiff contends that the mortise chain in controversy is a well-known type of chain since, according to the witness Joy, it has the characteristic "series of laminations or rings fitted together to permit

articulation." As a matter of fact, a physical examination of exhibit 1 would clearly indicate that it is a chain which, together with a sprocket (exhibit 2) and a guide bar (exhibit 3), constitutes mortise equipment. It has the appearance of a well-known sprocket chain, and the mere fact that it has cutting attachments does not, in our opinion, deprive it of its classification as a chain. However, for reasons which will be set out below, the chain is excluded from the provisions of paragraph 329 and is properly classifiable in paragraph 352.

It will be observed that whereas paragraph 329, as modified, provides for "Chain and chains of *all kinds*, made of iron or steel," the rate of duty being determined by the diameter of the chain—paragraph 352 provides for "cutting tools of *any kind* containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium." [Italics supplied.]

Obviously, chain and chains of all kinds have a great variety of uses. For instance, they may serve for the transmission of power, for lifting great weights, for locks on doors, etc.; whereas the provision in paragraph 352, with which we are here concerned, is for cutting tools of any kind containing certain percentages of well-known alloying materials, and such tools are specifically limited to those used for "cutting." Furthermore, the rates applicable to cutting tools "shall not apply to holding or operating devices." Upon this latter point, plaintiff contends that the subject mortise chain is, in fact, an operating device and, for that reason, is excluded from said paragraph 352.

In our opinion, a careful analysis of paragraph 352 refutes this view.

It will be recalled that paragraph 352 enumerates "Twist and other drills, reamers, milling cutters, taps, dies, die heads, and metal-cutting tools of all descriptions, and cutting edges or parts for use in such tools, composed of steel or substitutes for steel, all the foregoing, if suitable for use in cutting metal, not specially provided for." This is followed with the enumeration of "cutting tools of any kind" containing certain percentages of alloying material. Said paragraph 352 then concludes with the following statement: "The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, *but shall not apply to holding or operating devices.*" [Italics supplied.]

If we were to adopt the contention of plaintiff that the mortise chain is an operating device and, therefore, excluded from paragraph 352, it would logically follow that the other cutting devices enumerated in said paragraph would likewise be excluded from the paragraph, and render it largely inoperative.

We are of the opinion, therefore, that the operating device in the case of the mortise equipment is the electric motor power, without which the machine would not function.

Being satisfied that the mortise chain in controversy is not excluded from paragraph 352 as an operating device, and inasmuch as the mortise equipment or mortise gear, as it is called, is equipped to be operated electrically, should it not be classified in paragraph 353 as parts of an article having as an essential element an electrical device?

Obviously the provision for articles having as an essential element an electrical device has a broad field of application, while the provision in paragraph 352, with which we are concerned, is limited to cutting tools of any kind containing vanadium, tungsten, molybdenum, or chromium.

For the foregoing reasons, we find and hold that the subject merchandise consists of cutting tools, alloyed with vanadium, tungsten, molybdenum, or chromium, which are neither holding nor operating devices. They were properly classified by the collector of customs in paragraph 352 and are dutiable at the appropriate rate provided therein.

The protest is overruled in all respects, and judgment will issue accordingly.